UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Michelle Walker, ) | Civil Action No.: 4:17-cv-00630-RBH |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff Michelle Walker has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for supplemental security income ("SSI"). This matter is now before the Court for review of the Report and Recommendation ("R & R") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rules 73.02(B)(2)(a) and 83.VII.02 (D.S.C.). [ECF # 23]. The Magistrate Judge recommends that the Court remand the matter back to the Commissioner for further proceedings. This Court has thoroughly reviewed the record in this case and now issues the following Order.

**Statement of Facts and Procedural History**

Plaintiff was born on April 19, 1968 and was forty-three years old on the date of the alleged onset of disability. [ECF #23, p. 2]. Plaintiff initially applied for supplemental security income ("SSI") on July 30, 2008, alleging a disability date of January 15, 2000. [ECF #17, p. 1]. She alleges she became disabled due to osteoarthritis, lumbar stenosis, tendinitis in both feet, and arthritis in her left shoulder and right hip. [ECF #17, p. 4]. Within the R&R, the Magistrate Judge adequately details Plaintiff's medical history. Briefly stated, Plaintiff suffers from degenerative disc disease at least as far

back as September 2011, as indicated by an MRI. In 2011, Plaintiff also complained of severe pain and cramps in her feet, as well as pains in her right hip, both knees, and in her back. On March 28, 2012, Plaintiff was diagnosed with mild sensory mononeuropathy on the right and chronic extrinsic and intrinsic tendinitis of her ankle, foot, and toes. [ECF #9-8, Ex. B3F]. In 2012, Plaintiff continued to complain of hip and lower back pain, as well as knee pain. These issues were treated with injections and medication. In late 2012, Plaintiff underwent a nerve conduction study, at which time the results were suggestive of a "mild left tibial neuropathy affecting motor components." [ECF #9-8, Ex. B11F]. During 2013, Plaintiff was seen by Dr. Noojin for knee, feet, and hip pain. The medical records indicate that prior x-rays showed significant arthritis. [ECF #9-9, Ex. B21F]. Dr. Presnal also saw Plaintiff in 2013, at which time he indicated in his notes that she should remain out of work until he could evaluate her again. [ECF #9-9, Ex. B19F]. On November 26, 2013, Plaintiff had a left total knee arthroplasty.[ECF #9-10, Ex. B28F]. In early 2014, Dr. Noojin again saw Plaintiff and treated her for moderate right knee osteoarthritis. [ECF #9-10, Ex. B30F]. Plaintiff continued treating with Dr. Presnal who recommended physical therapy, although he was not sure how compliant she had been with treatment.[ECF #9-9, Ex. B30F]. In 2015, Plaintiff continued to treat with Dr. Noojin for back pain, hip pain, and knee pain. Plaintiff also saw Dr. Nallu in 2015 who diagnosed Plaintiff as having mild degenerative disc disease at L5/S1 and mild lumbar facet degenerative changes in the lower lumbar spine. [ECF #9-10, Ex. B30F]. Dr. Motcycka performed a consultative examination in 2015. He opined that he did not see a hindrance to Plaintiff performing sedentary type duty or desk duty. [ECF #9-9, Ex. B23F]. Plaintiff continued being treated in 2015 for back pain, ankle swelling, hip pain, and knee pain. A lumbar spine MRI showed "moderate to severe facet arthropathy at L4-5 with an asymmetric disc bulge to the right causing mild right neuroforaminal stenosis without nerve root compression." [ECF

#9-9, Ex. B26F].

With respect to mental impairments, Plaintiff argues she has a low IQ and deficits in adaptive functioning. The records reveal that Plaintiff was placed in a special program in ninth grade based upon an Individualized Education Plan ("IEP"). Plaintiff underwent testing when she was eleven years old and obtained a Full Scale IQ of 64. When she was fourteen years old, she obtained a Verbal IQ score of 67, a Performance IQ score of 87, and a Full Scale IQ score of 75. [ECF #9-10, Ex. B27F].

After obtaining an unfavorable decision from the Administrative Law Judge, Plaintiff requested a review from the Appeals Council, but this request was denied on November 10, 2011. [ECF #17, p. 2]. Plaintiff then filed a new application for SSI on May 12, 2012. [ECF #17, p. 2]. This claim was denied initially and upon reconsideration. After requesting and being granted a hearing, an ALJ denied Plaintiff's application for benefits on January 28, 2014. [ECF #17, p. 2]. By its action dated February 4, 2015, the Appeals Council remanded Plaintiff's case to an ALJ to further consider the opinion of Dr. Presnal and to address the previous ALJ decision that considered and resolved a prior application of benefits filed by Plaintiff. [ECF #9-2, p. 12]. Plaintiff appeared and testified at a hearing held on October 20, 2015. [ECF #17, p. 2]. On December 3, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. On January 9, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

The ALJ's findings were as follows:

> (1) The claimant has not engaged in substantial gainful activity since March 21, 2012, the application date (20 CFR 416.971 *et seq.*).
>
> (2) The claimant has the following severe impairments: lumbar spine degenerative disc disease with radiculopathy, degenerative joint disease of the left elbow and bilateral knees, status-post left total knee arthroplasty, bilateral osteoarthritis of the feet, left

3

shoulder AC osteoarthritis, left shoulder rotator cuff tendinitis, left shoulder bursitis, and morbid obesity (20 C.F.R. 404.1520(c)).

(3) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925 and 416.926).

(4) After careful consideration of the entire record, I find that the claimant has the residual functional capacity of no lifting or carrying over 10 pounds occasionally and less than 10 pounds frequently; with no standing or walking over an aggregate of two hours in an eight-hour workday; with no more than occasional stooping, balancing, and climbing of stairs and ramps; with no crouching, kneeling, crawling, and climbing of ladders, ropes, or scaffolds; with no more than occasional overhead reaching with the left, non-dominant upper extremity; with no restriction involving the right upper extremity; with no more than occasional use of the lower extremities for foot controls; with no tasks requiring exposure to unprotected heights or dangerous machinery; with the need to stand briefly at the workstation after one hour of sitting; and with absenteeism of one to two workdays per month.

(5) The claimant has no past relevant work (20 CFR 416.965).

(6) The claimant was born on April 19, 1968, and was 43 years old, which is defined as a younger individual age 18-44, on the date the application was filed. The claimant subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

(7) The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

(8) Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

(9) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

> (10) The claimant has not been under a disability, as defined in the Social Security Act, since March 21, 2012, the date the application was filed (20 CFR 416.920(g)).

[ECF #9-2, pp. 12-27].

On March 7, 2017, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #17, ECF #19], and the Magistrate Judge issued a Report and Recommendation ("R&R") on July 18, 2018, recommending that the Commissioner's decision be remanded to the Commissioner. [ECF #23]. The Magistrate Judge determined that the ALJ did not address the consistency and supportability of the opinions of the three treating specialists who treated Plaintiff, and thus recommended remanding the matter back to the Commissioner to conduct a proper review based on the record presented. [ECF #23, p. 32]. The Commissioner filed objections on July 25, 2018. [ECF #25]. The Commissioner objects to remanding this case, arguing that the ALJ already properly addressed the treating physicians' predictions of excessive absenteeism. [ECF #25, p. 2]. Plaintiff did not file objections or a response to Commissioner's objections.

## Standard of Review

**I.    Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

5

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error

in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## Applicable Law

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether she is under a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.\* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that her impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving she could not perform her customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant

numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that she can no longer perform her previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors.

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing past relevant work;[2] and (5) whether the impairment prevents her from doing substantial gainful activity. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R.

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

§ 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). Once an individual has made a prima facie showing of disability by establishing the inability to return to past relevant work, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a vocational expert demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to past relevant work. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

## **Analysis**

In her initial brief, Plaintiff argues that the ALJ made several errors, including: (1) the ALJ failed to properly assess medical opinion evidence; (2) the ALJ did not properly explain the Plaintiff's Residual Functional Capacity ("RFC") pursuant to SSR 96-8p and erred in finding that there were limited objective findings to support further restrictions; (3) the ALJ erred in determining Plaintiff had ability to do substantial work despite the testimony of the vocational expert and because it was in violation of the dictionary of occupational titles; and (4) the ALJ failed to properly evaluate Listing

12.05. [ECF #17]. After reviewing Plaintiff' arguments, along with Commissioner's responses, the Magistrate Judge recommended remanding this matter back to the Commissioner because he found that the ALJ did not address the consistency and supportability factors addressed in 20 C.F.R. § 416.927 when considering the opinion of three treating physicians. Based on this recommendation, the Magistrate Judge recommends the ALJ should consider Plaintiff's remaining allegations of error including any findings related to restrictions within the RFC, as well as any potential mischaracterization of the evidence, as alleged by Plaintiff. [ECF #23, p. 29]. The Magistrate Judge further recommended that while he concluded any failure to explictly state the ALJ was considering Listing 12.05 was harmless error, if the matter is indeed remanded, the ALJ should make appropriate and clear findings regarding Listing 12.05. With respect to Plaintiff's argument regarding the conflict between the vocational expert and the dictionary of occupational titles, the Magistrate Judge did not find any error in the ALJ's analysis. However, the Magistrate Judge acknowledged that the ALJ would not be prevented from taking additional testimony from a vocational expert, should this matter be remanded. Plaintiff did not object to any of these findings. However, the Commissioner filed an objection to the R&R.

The Commissioner objects to the Magistrate Judge's determination that the matter should be remanded to allow the ALJ to properly assess the treating physicians' explanation of excessive absenteeism. The Commissioner argues that: (1) the ALJ did properly address and supports the analysis given to the opinions; and (2) the law is clear that a prediction of absences to attend medical appointments is not a functional assessment and therefore need not be reviewed. Relatedly, the Commissioner argues that within the decision, the ALJ adequately explains and supports the RFC determination, and contrary to the Magistrate Judge's determination, the ALJ did provide a detailed

explanation for finding a lesser degree of absenteeism in the RFC.

An ALJ must consider and weigh all medical opinions included in a claimant's case. 20 C.F.R. § 404.1527(c). Moreover, an ALJ must give the opinion of a treating physician controlling weight if that opinion is well-supported by "medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence" within the record. 20 C.F.R. § 404.1527(c)(2). Factors to consider when weighing medical opinions include whether the source examined or treated a claimant, the length and frequency of treatment, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion to the record as a whole, and whether the source is a specialist. 20 C.F.R. § 404.1527(c). In considering the appropriate weight to give a treating physician's opinion, an ALJ must give good reasons in explaining the weight given such an opinion. 20 C.F.R. § 404.1527(c)(2). In weighing this evidence, an ALJ must avoid substituting his own medical judgment for that of the treating physician or physicians where the opinions of the treating physicians are supported by medical evidence. *See Bledsoe v. Comm'r of Soc. Sec.*, No. 1:09-CV-564, 2011 WL 549861, at *7 (S.D. Ohio 2011); *See generally Ferguson v. Schweiker*, 765 F.2d 31, 37 (3rd Cir. 1985) (noting that the ALJ improperly discredited the opinions of a treating doctor by determining the opinion was contrary to the objective medical evidence in the file).[3]

In this case, three of Plaintiff's treating physicians all opined that Plaintiff would miss at least three (or more) day of work per month given her medical limitations. However, in the RFC, the ALJ only limited Plaintiff to missing one or two work days per month. This Court agrees with the Magistrate Judge that the decision lacks the requisite discussion needed regarding consistency and supportability

---

[3] This claim and subsequent decision by the ALJ was decided prior to March 27, 2017, the date upon which the regulations were amended regarding weight given to medical opinions. Therefore, this Court will consider whether the ALJ's decision comports with the regulations in effect at the time the ALJ rendered his decision.

11

of opinions pursuant to 20 C.F.R. § 416.927(c). The ALJ gave limited weight to the opinion of Plaintiff's treating orthopedist, Dr. Presnal, who determined that Plaintiff would miss four days a month because it was "not supported by his treatment notes or the overall record." [ECF #9-2, p. 18]. The ALJ does not provide any further detail regarding which treatment notes do not support this determination.[4] The ALJ gives the same reasoning for rejecting Dr. Naoojin's conclusion that Plaintiff would miss about three days of work per month; namely that the treatments notes and overall record did not support the conclusion, and that it appears this level of absenteeism is based on the claimant's own subjective reports. However, the ALJ does not appear to consider the fact that the treating physician could have made this determination based upon his own personal observation of Plaintiff. With respect to Dr. Bell, Plaintiff's primary care physician, the ALJ noted that Dr. Bell determined Plaintiff would miss about three work days a month. However, the ALJ again gives Dr. Bell's opinion partial weight because his conclusions are not supported by treatment notes of record and diagnostic imaging. The ALJ gives the same succinct reason each time for arguing that the physicians' conclusions are not supported by the record, but the ALJ does not otherwise explain which records necessitate rejecting the conclusion that Plaintiff's limitations would require her to miss three or more days of work. Moreover, the record contains three treating physician opinions, all of which are consistent with each other and tend to support one another. The ALJ does not adequately explain why these three seemingly consistent opinions were not given substantial weight, or why the RFC only provides for one or two days of absenteeism. This Court agrees that the ALJ's reasoning does not provide an accurate and logical bridge from the evidence to his conclusions, such that this Court would be able to conduct a meaningful review of the decision. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal citations omitted).

---

[4] Interestingly, the ALJ gave "significant weight" to the determination within the medical statement that opined Plaintiff could work for 8 hours a day.

While this Court agrees that the ALJ provides a detailed analysis generally, this Court is unable to determine which parts of the record do not support a finding that Plaintiff would miss the amount of days of work opined by three of her treating physicians, one of which is her orthopedist. The Commissioner's argument is that Plaintiff's strength tests and the opinions of the consultative examiner and state agency consultants support a finding that Plaintiff would be absent only one or two days a month; however, this Court cannot ascertain from the ALJ's decision whether this was his reason for also discounting the opinions of three other physicians. The vocational expert testified that missing three days of work per month would eliminate Plaintiff's ability to work; therefore, this finding is particularly important and this Court cannot conclude this portion of the decision is harmless error.

This Court has also considered the Commissioner's argument that the law is clear that a prediction of absences to attend medical appointments is not a cognizable functional assessment. However, unlike the case cited by the Commissioner, Plaintiff is not arguing that the fact that she has an excessive number of medical appointments should render her disabled. *See generally Cherkaoui v. Commissioner*, 678 Fed. Appx. 902, 904 (11th Cir. 2017). Instead, Plaintiff's argument is that three physicians opined that she would have significant limitations due to her medical conditions, one such limitation being that she would miss three or more days of work. This Court acknowledges that within the R&R, the Magistrate Judge notes that the record "contains months where Plaintiff was seen for treatment two or three times in various months". [ECF #23, p. 28]. Nonetheless, it is unclear from the record whether the physicians opined Plaintiff would three or more days of work based on a need to attend medical appointments or due to an exacerbation of her impairments. Nor is this Court remanding this matter based on an argument that ALJ failed to consider the number of medical appointments she attends in assessing her RFC. Instead, this Court agrees that the ALJ did not provide an adequate basis

for rejecting three medical opinions suggesting that Plaintiff's medical impairments might themselves preclude her from working three or more days per month. Accordingly, this Court agrees with the Magistrate Judge that this matter should be remanded to the Commissioner for further consideration.

This Court notes that neither Plaintiff nor Commissioner objected to any other portions of the Magistrate Judge's R&R, and this Court finds no clear error in the remaining recommendations found within the R&R. Accordingly, because this Court is remanding this matter back to the Commissioner, this Court also finds that the ALJ should make appropriate and clear findings that clearly comport with Listing 12.05, and reevaluate the RFC, to the extent that determination is impacted by the issues on remand.

## Conclusion

The Court has thoroughly considered the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections, and the applicable law. For the above reasons, the Court adopts the Magistrate Judge's recommendation to affirm the Commissioner's decision. [ECF #23]. The Court **REVERSES** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and **REMANDS** the case to the Commissioner to reconsider the evidence of record consistent with the findings in this Order.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
August 24, 2018  R. Bryan Harwell
United States District Judge